1
2
3
4
5
6
7

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES C. McCURDY, | No. 2:21-CV-1764-DAD-DMC-P |
| Plaintiff, | |
| v. | <u>FINDINGS AND RECOMMENDATIONS</u> |
| P. BLANCO, et al., | |
| Defendants. | |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Defendants' motion to partially dismiss. <u>See</u> ECF No. 26.  Plaintiff has not filed an opposition despite having been granted several extension of time to do so.

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true.  <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 93-94 (2007).  The Court must also construe the alleged facts in the light most favorable to the plaintiff.  <u>See</u> <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974); <u>see also</u> <u>Hosp. Bldg. Co. v. Rex Hosp. Trustees</u>, 425 U.S. 738, 740 (1976); <u>Barnett v. Centoni</u>, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All ambiguities or doubts must also be resolved in the plaintiff's favor.  <u>See</u> <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421 (1969).  However, legally conclusory statements, not supported by actual factual allegations, need not be accepted.  <u>See</u> <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949-50 (2009).

1

1  In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers.

2  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

3     Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement

4  of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair

5  notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly,

6  550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order

7  to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain

8  more than "a formulaic recitation of the elements of a cause of action;" it must contain factual

9  allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56.  The

10 complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at

11 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

12 court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

13 Iqbal, 129 S. Ct. at 1949.  "The plausibility standard is not akin to a 'probability requirement,' but

14 it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting

15 Twombly, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a

16 defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement

17 to relief." Id. (quoting Twombly, 550 U.S. at 557).

18    In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials

19 outside the complaint and pleadings.  See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998);

20 Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The Court may, however, consider: (1)

21 documents whose contents are alleged in or attached to the complaint and whose authenticity no

22 party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question,

23 and upon which the complaint necessarily relies, but which are not attached to the complaint, see

24 Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials

25 of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir.

26 1994).

27 / / /

28 / / /

2

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

## I. PLAINTIFF'S ALLEGATIONS

This action proceeds on Plaintiff's first amended complaint. See ECF No. 12. Plaintiff James C. McCurdy names the following as defendants: (1) P. Blanco, a sergeant at California State Prison – Sacramento (CSP-Sac.), (2) Earles, a sergeant at CSP-Sac., and (3) Hougland, a lieutenant at CSP-Sac. See id. at 2. Plaintiff asserts three claims for relief.

Claim I

Plaintiff asserts a violation of the Eighth Amendment's Cruel and Unusual Punishment Clause against Defendant Earles for grabbing ahold of Plaintiff's arms and cuffing him during an interview regarding a prior complaint. See ECF No. 12, pgs. 3-4. Plaintiff alleges that, on November 13, 2017, Officer Brown escorted Plaintiff to the B-yard where Defendants Earles and Blanco interviewed Plaintiff regarding a sexual assault allegation that occurred a year ago. See id. Plaintiff asserts that he complained of abdominal pain during the interview, and Defendants Earles and Blanco asked Plaintiff to remove his jumpsuit so they could document any injuries. See id. Plaintiff mentioned to Defendants Earles and Blanco that he was previously sexually assaulted. See id. According to Plaintiff, Defendant Earles then "snapped and grabbed ahold of my arms cuffed behind my back and wrenched them up over my head," causing Plaintiff to scream. Id. Next, Plaintiff contends Defendant Earles "jerked me up and wrestled me threw [sic] the door. . . ." Id. Plaintiff states he was dragged kicking and screaming to his cell with his pants still down around his legs. See id.

Claim II

Plaintiff also asserts a violation of his First Amendment rights due to threats of retaliation based on intimidation and interference with the petition process. See id., pg. 5. Essentially, it appears Plaintiff alleges that he needed to exhaust his administrative remedies, which he planned to do, but which never occurred due to the purported intimidation, threats,

destruction of legal work, use of physical force, and failure to allow for required interviews, all in retaliation for filing legal actions and alleging sexual assault.  See id., pgs. 5-8. Plaintiff alleges that on November 13, 2017, he met with Defendant Earles for an interview to discuss his various complaints.  See id.  Plaintiff alleges that Defendant Earles used intimidation and verbal threats when Plaintiff attempted to include details of the sexual assault that occurred in April 2016, allegedly in an attempt to cause Plaintiff to refuse to go forward with the 602 interview.  See id.  Plaintiff alleges that Defendant Earles destroyed his "legal work" in retaliation, which also denied his access to the courts.  See id.

Furthermore, Plaintiff alleges that he met with Defendant Hougland for PREA interview because of his complaints and Defendant Hougland retaliated against Plaintiff by threats and intimidation also in an attempt to get Plaintiff to refuse to go forward with the interview. See id.  According to Plaintiff, Defendant Hougland said he would use anything Plaintiff said in the interview to incriminate him in a pending criminal case against Plaintiff arising from a charge of battery on a peace officer at a prior prison.  See id.  Plaintiff claims Defendant Blanco was present and did nothing.  See id., pgs. 5-6.  Further, Plaintiff alleges that Defendant Blanco refused Plaintiff a 602 interview where he could include the sexual assault in order to exhaust his administrative remedies.  See id., pg. 7.  Plaintiff asserts that Defendant Hougland interfered with Plaintiff's 602 process, threatened Plaintiff, and retaliated against Plaintiff by "openly expressing that he would deter [Plaintiff] from filing such complaint and receiving" § 1983 relief.  Id.

According to Plaintiff, Defendants Blanco and Hougland took adverse action against Plaintiff by stopping and refusing Plaintiff a videotaped 602 interview regarding his sexual assault claims, as required in order to exhaust, prior to filing legal action.  Id.  Plaintiff also claims that Defendant Hougland attempted to deter Plaintiff from completing his administrative remedies, by stating that "they both thought [Plaintiff] was making [the] story [of sexual assault] up to muddy the water" and that Defendant Earles was justified in using excessive force.  See ECF No. 12, pg. 6.  Further, Defendant Hougland allegedly stated that he would make sure that Plaintiff's complaints "went nowhere."  See id.

4

1       Claim III

2               Plaintiff also asserts a violation of his First Amendment rights based on denial of

3       access to the courts.  See id., pg. 11.  Generally, it appears Plaintiff claims an interference with

4       court access based on failure of Defendants to assist Plaintiff in preparation and filing of

5       meaningful legal papers by providing assistance and allowing him the necessary 602 interviews.

6       See id.  Plaintiff states that he believes he has two claims for denial of access: (1)  claim for when

7       "c/o" interfered with Plaintiff's attempt to bring legal action and (2) retaliation claim where "c/o"

8       retaliated against Plaintiff for bringing, and attempting to bring, legal action.  See id.

9               Plaintiff asserts that Defendants engaged in intimidation and threats of retaliation

10      to deter Plaintiff from exhausting administrative remedies necessary in order to file his federal

11      action.  See id.  Plaintiff alleges that Defendants Earles and Blanco refused Plaintiff access to 602

12      interview and Defendant Hougland was "true to his threats and made sure that [his] 602 went

13      nowhere" by refusing 602 interviews.  See id.  Defendant Hougland allegedly used threats and

14      intimidation to deter Plaintiff from filing and exhausting claims on each action against officials in

15      first 602 and in the subsequent 602 against Defendant Hougland, Earles and Blanco.  See id.

16      Plaintiff asserts that Defendant Earles threatened Plaintiff with destroying legal injury reports,

17      transfer, using physical force to move Plaintiff from interview.  See id.  Further, Plaintiff alleges

18      that Defendant Hougland "had [a] hand in" denial of his due process where he was given

19      "impartial" [sic] hearing official, denied witnesses and evidence."  Id.

20

21                                      **II.  DISCUSSION**

22              Before the Court is a motion to partially dismiss, ECF No. 26-1. In Defendants'

23      motion to partially dismiss, Defendants argue that Plaintiff failed to state an actual injury in his

24      First Amendment access to courts claim. See ECF No. 26-1 at 1.  Additionally, Defendants move

25      to dismiss all claims against Defendant Blanco and Hougland for Plaintiff's failure to exhaust all

26      available administrative remedies. See id.  Except as relates to exhaustion, Defendants do not

27      otherwise challenge Plaintiff's Eighth Amendment claim or First Amendment retaliation claim.

28      / / /

                                              5

1        A.        **First Amendment Access-to-Courts Claim**

2                Prisoners have a First Amendment right of access to the courts.  See Lewis v.

3    Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Jones v. Williams,

4    791 F.3d 1023, 1035 (9th Cir. 2015); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995).  Prison

5    officials must "assist inmates in the preparation and filing of meaningful legal papers by

6    providing prisoners with adequate law libraries or adequate assistance from persons trained in the

7    law."  Bounds, 430 U.S. at 828; Silva v. Di Vittorio, 658 F.3d 1090, 1103 (9th Cir. 2011)

8    (overruled on other grounds as stated by Richey v. Dahne, 807 F.3d 1202, 1209 n.6 (9th Cir.

9    2015).  But the right does not require a particular methodology.  See Lewis, 518 U.S. at 356.  It

10   guarantees the "capability of bringing contemplated challenges to sentences or conditions of

11   confinement before the courts."  Id.  It does not promise to turn inmates into effective litigators.

12   See id. at 354-55; Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009).

13               The right of access secures the ability to present non-frivolous claims to the court,

14   it does not secure a right to discover claims or litigate them effectively once filed.  See Lewis,

15   518 U.S. at 354-55; Phillips, 477 F.3d at 655.  The tools required are those that inmates need to

16   attack their sentences or challenge conditions of confinement.  See Lewis, 518 U.S. at 355;

17   Phillips, 477 F.3d at 655.  "Impairment of any other litigating capacity is simply one of the

18   incidental (and perfectly constitutional) consequences of conviction and incarceration."  Lewis,

19   518 U.S. at 355; see Phillips, 477 F.3d at 655.  The right is restricted to non-frivolous criminal

20   appeals, civil rights actions under 42 U.S.C. § 1983, and habeas corpus petitions.  Lewis, 518

21   U.S. at 353 n.3, 354-56.

22               The United States Supreme Court has identified two categories of access-to-court

23   claims.  Christopher v. Harbury, 536 U.S. 403, 412-13 (2002).  The first category includes

24   "forward-looking" claims, which allege that official action presently frustrates a plaintiff's ability

25   to prepare and file a suit.  Id. at 413.  The second category, "backward-looking" claims, allege

26   that due to official action, a specific case "cannot now be tried (or tried with all material

27   evidence), no matter what official action may be in the future."  Id. at 413-14.  These cases look

28   "backward to a time when specific litigation ended poorly, or could not have commenced, or

6

1    could have produced a remedy subsequently unobtainable." Id. at 414.

2              To establish an access to the court violation, a prisoner must identify an actual

3    injury. Lewis, 518 U.S. at 349-351; Nev. Dep't of Corrs. v. Greene, 648 F.3d 1014, 1018 (9th

4    Cir. 2011); Urmancheev v. Anglea, No.:1:19-cv-00791-DAD-JLT (PC), 2020 WL 1904818, at *2

5    (E.D. Cal. Apr. 17, 2020). An actual injury is "actual prejudice with respect to contemplated or

6    existing litigation, such as the inability to meet a filing deadline or to present a claim." Lewis,

7    518 U.S. at 349; Urmancheev, 2019 WL 1904818, at *2. An actual injury is a jurisdictional

8    requirement and may not be waived. See Lewis, 518 U.S. at 348-52; Urmancheev, 2019 WL

9    1904818, at *2. And in the backward-looking context more specifically, a plaintiff must identify:

10   (1) loss of a "nonfrivolous," "arguable" underlying claim; (2) the official acts that frustrated the

11   litigation of the underlying claim; and (3) a remedy that "may be awarded as recompense but [is]

12   not otherwise available in some suit that may yet be brought." Harbury, 536 U.S. at 414-18;

13   Urmancheev, 2019 WL 1904818, at *2; Kabede v. Brown, No. 2:16-cv-1765 DB (P), 2017 WL

14   714300, at *6 (E.D. Cal. Feb. 22, 2017).

15             Here, Defendants argue Plaintiff fails to allege an actual injury. According to

16   Defendants:

17             Although Plaintiff alleges that Defendants interfered with his
         ability to exhaust his administrative remedies for another case by
18       misplacing his legal work and cancelling his 602 interview, Plaintiff fails
         to establish that he was denied access to the courts, that his case was
19       dismissed, or that he suffered an actual injury as a result of Defendants'
         actions. In his FAC, Plaintiff alleges that Defendants' acts or omissions
20       prejudiced his ability to exhaust his administrative remedies in the "suit
         [he] filed" which he identifies as case number "17-cv-1356-SAB" styled
21       as McCurdy v. Kernan, Case No. 1:17-cv-01356-SAB (PC), (E.D. Cal.).
         (See ECF No. 12 at 6; ECF No. 12 at 5-6; Request for Judicial Notice
22       ("RJN"), Ex. A.) [footnote 4 omitted]. Specifically, Plaintiff alleges that,
         at the time he filed the instant action, he "had just filed a § 1983 action
23       and needed to exhaust [his] administrative remedies, which [he] planned
         to do, then amend [his] complaint after [he] received a '2nd level
24       response,' which never occurred because c/o retaliation." (ECF No. 12 at
         5.) Plaintiff further alleges that when Blanco and Earles cancelled his
25       "602" for a second time he could not move forward with his "602 and §
         1983 action which also denied his access to courts." (ECF No. 12 at 5.)
26             In McCurdy v. Kernan, Plaintiff sued Officer Bautista for force
         used during violent cell extraction at CSP-Corcoran. (RJN Ex. A at 14-
27       16.) Plaintiff alleged that during the April 18, 2016 cell extraction,
         Defendant Bautista, who was the "shield officer," crashed into Plaintiff
28       with his shield, fell on top of Plaintiff with the shield, and then after

                                              7

Plaintiff was placed in restraints, Defendant Bautista grabbed Plaintiff's testicles and penis, squeezed them hard, and then punched Plaintiff in his genitals. (RJN Ex. A at 13-15.) Plaintiff submitted inmate appeal log no. CSPC-7-17-00350, which grieved that Defendant Bautista used excessive force against Plaintiff on April 18, 2016, during the cell-extraction, however Plaintiff failed to submit an inmate appeal that received a third-level decision. (RJN Ex. C at 10; *see also* ECF No. 12 at 4.)

On February 19, 2019, Defendant Bautista filed a motion for summary judgment alleging that Plaintiff failed to exhaust administrative remedies. (RJN Ex. B.) On June 19, 2019, the magistrate judge issued findings and recommendations denying Defendant's motion for summary judgment for failure to exhaust administrative remedies, which the court adopted in full on August 8, 2019. (RJN Ex. D.) A trial on Plaintiff's claims against Defendant Bautista was scheduled to begin on March 1, 2022, however, on January 31, 2022, Plaintiff filed a stipulation for voluntarily dismissal with prejudice indicating that the parties "had resolved [the] case in its entirety." (RJN Ex. E and F.)

ECF No. 26-1, pgs. 7-8.

Given the outcome of <u>McCurdy v. Kernan</u>, Defendants conclude that Plaintiff's ability to litigate against Officer Bautista was unhindered by Defendants' alleged conduct. See <u>id.</u> at 8.

The Court agrees. Based on Plaintiff's allegations and Defendants' argument, Plaintiff generally alleges that Defendants actively interfered with his right to litigate his other case against Defendant Bautista. Plaintiff cannot show, however, that Defendants' alleged conduct actually injured his litigation efforts. Although Plaintiff was not able to submit an appeal that received a third level decision, Plaintiff ultimately prevailed on Defendant's motion for summary judgement for failure to exhaust administrative remedies and then later voluntarily dismissed the case. Accordingly, the undersigned recommends granting Defendants' partial motion to dismiss as to Plaintiff's access-to-courts claim, which should be dismissed with prejudice as against all defendants.

## B.     <u>Exhaustion of Administrative Remedies</u>

Prisoners seeking relief under § 1983 must exhaust all available administrative remedies prior to bringing suit. See 42 U.S.C. § 1997e(a). This requirement is mandatory regardless of the relief sought. See <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001) (overruling <u>Rumbles v. Hill</u>, 182 F.3d 1064 (9th Cir. 1999)). Because exhaustion must precede the filing of the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies

1    while the lawsuit is pending.  See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002).  The

2    Supreme Court addressed the exhaustion requirement in Jones v. Bock, 549 U.S. 199 (2007), and

3    held: (1) prisoners are not required to specially plead or demonstrate exhaustion in the complaint

4    because lack of exhaustion is an affirmative defense which must be pleaded and proved by the

5    defendants; (2) an individual named as a defendant does not necessarily need to be named in the

6    grievance process for exhaustion to be considered adequate because the applicable procedural

7    rules that a prisoner must follow are defined by the particular grievance process, not by the

8    PLRA; and (3) the PLRA does not require dismissal of the entire complaint if only some, but not

9    all, claims are unexhausted.  The defendant bears burden of showing non-exhaustion in the first

10   instance.  See Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014).  If met, the plaintiff bears the

11   burden of showing that the grievance process was not available, for example because it was

12   thwarted, prolonged, or inadequate.  See id.

13            The Supreme Court held in Woodford v. Ngo that, in order to exhaust

14   administrative remedies, the prisoner must comply with all of the prison system's procedural

15   rules so that the agency addresses the issues on the merits.   548 U.S. 81, 89-96 (2006).  Thus,

16   exhaustion requires compliance with "deadlines and other critical procedural rules."  Id. at 90.

17   Partial compliance is not enough.  See id.  Substantively, the prisoner must submit a grievance

18   which affords prison officials a full and fair opportunity to address the prisoner's claims.  See id.

19   at 90, 93.  The Supreme Court noted that one of the results of proper exhaustion is to reduce the

20   quantity of prisoner suits "because some prisoners are successful in the administrative process,

21   and others are persuaded by the proceedings not to file an action in federal court."  Id. at 94.

22   When reviewing exhaustion under California prison regulations which have since been amended,

23   the Ninth Circuit observed that, substantively, a grievance is sufficient if it "puts the prison on

24   adequate notice of the problem for which the prisoner seeks redress. . . ."  Griffin v. Arpaio, 557

25   F.3d 1117, 1120 (9th Cir. 2009); see also Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010)

26   (reviewing exhaustion under prior California regulations).

27   / / /

28   / / /

9

1        A prison inmate in California satisfies the administrative exhaustion requirement

2   by following the procedures set forth in §§ 3084.1-3084.8 of Title 15 of the California Code of

3   Regulations.  In California, inmates "may appeal any policy, decision, action, condition, or

4   omission by the department or its staff that the inmate . . . can demonstrate as having a material

5   adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a).

6   The inmate must submit their appeal on the proper form and is required to identify the staff

7   member(s) involved as well as describing their involvement in the issue.  See Cal. Code Regs. tit.

8   15, § 3084.2(a).  These regulations require the prisoner to proceed through three levels of appeal.

9   See Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.2, 3084.7.  A decision at the third formal level,

10   which is also referred to as the director's level, is not appealable and concludes a prisoner's

11   departmental administrative remedy.  See id.  Departmental appeals coordinators may reject a

12   prisoner's administrative appeal for a number of reasons, including untimeliness, filing excessive

13   appeals, use of improper language, failure to attach supporting documents, and failure to follow

14   proper procedures.  See Cal. Code Regs. tit. 15, §§ 3084.6(b).  If an appeal is rejected, the inmate

15   is to be provided clear instructions how to cure the defects therein.  See Cal. Code Regs. tit. 15,

16   §§ 3084.5(b), 3084.6(a).

17        Under McBride v. Lopez, 807 F.3d 982, 987-88 (9th Cir. 2015), a prison grievance

18   system may be deemed "unavailable," excusing a plaintiff's lack of exhaustion, if two conditions

19   are met. First, a prisoner "must provide a basis for the court to find that he actually believed

20   prison officials would retaliate against him if he filed a grievance." Id. at 987. If the prisoner

21   makes this showing, he must then demonstrate that his belief was objectively reasonable; that is,

22   "there must be some basis in the record from which the district court could determine that a

23   reasonable prisoner of ordinary firmness would have understood the prison official's actions to

24   threaten retaliation if the prisoner chose to utilize the prison's grievance system. Only then will

25   the threat render the prison grievance system effectively unavailable." Id. at 987-988 (internal

26   citations omitted). Furthermore, "[h]ostile interaction with prison officials, even when it includes

27   a threat of violence, does not necessarily render the grievance system 'unavailable.'" Id. at 988.

28   "[G]eneral and unsubstantiated fears about possible retaliation" are also insufficient. Rodriguez v.

1   Cty. of L.A., 891 F.3d 776, 794 (9th Cir. 2018). Finally, "[a]lthough circumstantial evidence can

2   be sufficient to overcome summary judgment in a retaliation case, such evidence must be

3   specific." Sealey v. Busichio, 696 F. App'x 779, 781 (9th Cir. 2017) (citing McCollum v. Cal.

4   Dep't of Corr. & Rehab., 647 F.3d 870, 882 (9th Cir. 2011)). References to unnamed officers

5   engaging in various activities at unspecified times do not satisfy this requirement. See id.

6           Since 2014, the failure to exhaust administrative remedies is appropriately brought

7   on a motion for summary judgment.  See Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014).  The

8   issue may, however, be raised on a motion to dismiss where the failure to exhaust is clear on the

9   face of the complaint.  See id. at 1166.

10          In their motion to partially dismiss, Defendants argue that, as shown by the inmate

11   grievance attached to Plaintiff's complaint, Plaintiff failed to exhaust administrative remedies for

12   any claims against Defendant Blanco and Defendant Hougland.  See ECF No. 26-1, pgs. 12-15.

13   Defendants' argument is based on "hand copy of 602 [inmate grievance] original" attached to

14   Plaintiff's amended complaint.  See ECF No. 12, pgs. 18-19.  Specifically, Defendants argue:

15              Plaintiff failed to exhaust available administrative remedies
        because his administrative grievance did not allege any wrongdoing by
16      Defendants Blanco or Hougland. An administrative grievance need not
        necessarily name every individual that could be subjected to a subsequent
17      lawsuit. *See Reyes v. Smith*, 810 F.3d 654, 659 (9th Cir. 2016) (holding
        that prisoner's identifying a committee's decision as the subject of his
18      grievance was sufficient to permit a 1983 suit against members of that
        committee); *see also Jones*, 549 U.S. at 219 (considering Michigan
19      department of correction grievance regulations with no requirement of
        naming all individuals involved in a grievance). "However, an
20      administrative grievance which both fails to name defendants and fails to
        allege the conduct of which the plaintiff now accuses those defendants is
21      insufficient to satisfy the PLRA exhaustion requirement." *Humdy v.
        Wilcher*, No. CV 17-00646-GW (JDE), 2018 WL 3629909, at *3 (C.D.
22      Cal. Apr. 11, 2018).
              Here, the only reference to Defendant Hougland in the Inmate
23      Appeal is an allegation that Plaintiff met with "Lt. Hougland who said the
        investigation of [Earles] will go nowhere." (ECF No. 12 at 18-19.) In
24      passing, Plaintiff referenced Defendant Hougland when he detailed the
        follow-up interviews, he attended following his sexual assault claims.
25      Specifically, Plaintiff explained that after Earles forcefully escorted him
        back to his cell, Earles came to his cell, and concluded the video
26      interview. (*Id.*) Following the canceled interview, Plaintiff never received
        a copy of his "7219." (*Id.*) However, he later "completed an interview
27      w/Sgt. Bullard" who questioned him "about the assault," and then he "met
        with Lt. Hougland [who] said that the investigation of [Earles] will go
28      nowhere." (*Id.*) Plaintiff made absolutely no mention of Defendant

                                        11

Blanco, nor did he describe any of the conduct, i.e., retaliation or interference with access to courts, of which he now accuses Defendants Blanco and Hougland. (*See* ECF No. 12 at 3-11.) Plaintiff does not claim in his grievance that *anyone* other than Defendant Earles took adverse action on November 13, 2017. (ECF No. 12 at 18-19.) Thus, Plaintiff's grievance failed to provide CDCR an opportunity to investigate any allegations against Blanco or Hougland, because it failed to allege that anyone other than Defendant Earles took unlawful action during the November 13 canceled interview. *See Woodford*, 548 U.S. at 93-94.

Because Plaintiff's grievance does not allege that anyone other than Defendant Earles was involved in the allegedly unlawful events, it cannot have exhausted claims against Defendants Blanco and Hougland. *See Morton v. Hall*, 599 F.3d 942, 945-46 (9th Cir. 2010) (holding that an administrative grievance that did "not even mention" the basis for a claim asserted in a civil action failed to exhaust that claim); Cal. Code Regs. tit. 15 § 3084.2(a); *Humdy*, 2018 WL 3629909, at *3. This argument stands even in the face of Plaintiff's arguments that Defendants thwarted his ability to exhaust to the third level. At bottom, even if Plaintiff exhausted his attached grievance to the third level of review, that grievance still failed to exhaust his retaliation and denial of access to courts claims against Blanco and Hougland because Plaintiff did not mention those allegations in the originally-submitted 602 grievance. Because Plaintiff's grievance did not allege any wrongdoing by anyone other than Defendant Earles, and he does not allege that he filed a separate or additional grievance regarding his retaliation and access to courts claims, Plaintiff failed to exhaust his available administrative remedies against Defendants Blanco and Hougland as required by the PLRA, and all claims against them should be dismissed.

ECF No. 26-1 at 14.

Defendants' argument is persuasive.  In the amended complaint, Plaintiff affirmatively alleges that he exhausted available administrative remedies as to his claims.  See ECF No. 12, pgs. 3, 5, 11.  Plaintiff does not attach a copy of the actual form 602 inmate grievance he submitted in connection with his claims.  Rather, at Exhibit B to the amended complaint, Plaintiff provides what he states is a two-page handwritten copy of his form 602 dated November 16, 2017.  See id. at 18-19.  Defendants have requested that the Court take judicial notice of the actual 602 form Plaintiff submitted to prison officials on November 16, 2017, and which was assigned number SAC-B-17-04319.  See ECF No. 26-2, pg. 162 (Exhibit G to request for judicial notice).  This document contains the exact same language as the handwritten copy attached to the amended complaint.  As Defendants correctly observe, Plaintiff's grievance only references Defendant Earles with respect to the alleged use of excessive force.  The grievance does not mention Defendant Blanco and Defendant Hougland is only mentioned insofar as

1    Plaintiff states that Hougland told Plaintiff that any investigation "will go nowhere."  This

2    reference, however, was to what Hougland allegedly said in the context of Plaintiff's separate

3    grievance concerning the events which were the topic of <u>McCurdy v. Kernan</u>.  As discussed

4    above, even if that comment is seen as accusing Hougland of misconduct with respect to

5    processing Plaintiff's grievances and interfering with Plaintiff's access to the courts, Plaintiff

6    cannot state a claim on this theory because he did not suffer any actual injury.

7    While typically the Court may not look to extrinsic evidence to decide a motion to

8    dismiss, it is appropriate in this instance to look to Exhibit G to Defendants' request for judicial

9    notice.  In particular, the Court may consider documents which, as here, are referenced in the

10   complaint and upon which the complaint relies.  <u>See</u> <u>Branch</u>, 14 F.3d at 454.  Plaintiff's amended

11   complaint references the November 16, 2017, inmate grievance and Plaintiff's allegation that he

12   exhausted administrative remedies relies on this document.  Further, the exact contents of the

13   document are reproduced by Plaintiff and attached to Plaintiff's amended complaint.

14   / / /

15   / / /

16   / / /

17   / / /

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

13

1

### III. CONCLUSION

2        Based on the foregoing, the undersigned recommends as follows:

3        1.      Defendants' request for judicial notice, ECF No. 26-2, be GRANTED.

4        2.      Defendants' partial motion to dismiss, ECF No. 26, be GRANTED.

5        3.      Plaintiff's First Amendment access-to-courts claim be DISMISSED as

6   against all defendants without leave to amend for failure to allege an actual injury.

7        4.      Plaintiff's First Amendment retaliation claims against Defendants Blanco

8   and Hougland be DISMISSED without leave to amend for failure to exhaust administrative

9   remedies.

10       5.      This action proceed on the first amended complaint, ECF No. 12, as to

11  Plaintiff's Eighth Amendment excessive force claim against Defendant Earles only.

12       6.      Defendant Earles be ordered to file an answer to Plaintiff's first amended

13  complaint.

14       These findings and recommendations are submitted to the United States District

15  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

16  after being served with these findings and recommendations, any party may file written

17  objections with the court.  Responses to objections shall be filed within 14 days after service of

18  objections.  Failure to file objections within the specified time may waive the right to appeal.  See

19  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

20

21  Dated:  March 18, 2024

22                                                DENNIS M. COTA
                                                UNITED STATES MAGISTRATE JUDGE
23

24

25

26

27

28

14