1
2
3
4
5
6
7
8            **IN THE UNITED STATES DISTRICT COURT**
9            **FOR THE EASTERN DISTRICT OF CALIFORNIA**
10

11    JAMES C. McCURDY,                    No.  2:21-CV-1764-DAD-DMC-P
12                Plaintiff,               ORDER
13        v.                               and
14    P. BLANCO, et al.,                   AMENDED FINDINGS AND
                                           RECOMMENDATIONS
15                Defendants.
16

17            Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to
18    42 U.S.C. § 1983. Pending before the Court is Defendants' motion to partially dismiss. See ECF
19    No. 26.  On March 19, 2024, the Court issued findings and recommendations that Defendants'
20    motion, which at the time the findings and recommendations were processed, was unopposed.
21    See ECF No. 45.  Plaintiff has now filed an opposition.  See ECF No. 44.  The Court therefore
22    issues this order and amended findings and recommendations to correctly reflect that Defendants'
23    motion is in fact opposed.
24            In considering a motion to dismiss, the Court must accept all allegations of
25    material fact in the complaint as true.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  The
26    Court must also construe the alleged facts in the light most favorable to the plaintiff.  See Scheuer
27    v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S.
28    738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All

                                          1

ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  However, legally conclusory statements, not supported by actual factual allegations, need not be accepted.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).  In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level."  Id. at 555-56.  The complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Id.  at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Twombly, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief."  Id. (quoting Twombly, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint and pleadings.  See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The Court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir.

2

1    1994).

2            Finally, leave to amend must be granted "[u]nless it is absolutely clear that no

3    amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per

4    curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

5

6                                **I. PLAINTIFF'S ALLEGATIONS**

7            This action proceeds on Plaintiff's first amended complaint. See ECF No. 12.

8    Plaintiff James C. McCurdy names the following as defendants: (1) P. Blanco, a sergeant at

9    California State Prison – Sacramento (CSP-Sac.), (2) Earles, a sergeant at CSP-Sac., and (3)

10   Hougland, a lieutenant at CSP-Sac. See id. at 2. Plaintiff asserts three claims for relief.

11           Claim I

12           Plaintiff asserts a violation of the Eighth Amendment's Cruel and Unusual

13   Punishment Clause against Defendant Earles for grabbing ahold of Plaintiff's arms and cuffing

14   him during an interview regarding a prior complaint. See ECF No. 12, pgs. 3-4. Plaintiff alleges

15   that, on November 13, 2017, Officer Brown escorted Plaintiff to the B-yard where Defendants

16   Earles and Blanco interviewed Plaintiff regarding a sexual assault allegation that occurred a year

17   ago. See id. Plaintiff asserts that he complained of abdominal pain during the interview, and

18   Defendants Earles and Blanco asked Plaintiff to remove his jumpsuit so they could document any

19   injuries. See id. Plaintiff mentioned to Defendants Earles and Blanco that he was previously

20   sexually assaulted. See id. According to Plaintiff, Defendant Earles then "snapped and grabbed

21   ahold of my arms cuffed behind my back and wrenched them up over my head," causing Plaintiff

22   to scream. Id. Next, Plaintiff contends Defendant Earles "jerked me up and wrestled me threw

23   [sic] the door. . . ." Id. Plaintiff states he was dragged kicking and screaming to his cell with his

24   pants still down around his legs. See id.

25   / / /

26   / / /

27   / / /

28   / / /

                                          3

1          Claim II

2          Plaintiff also asserts a violation of his First Amendment rights due to threats of

3   retaliation based on intimidation and interference with the petition process.  See id., pg. 5.

4   Essentially, it appears Plaintiff alleges that he needed to exhaust his administrative remedies,

5   which he planned to do, but which never occurred due to the purported intimidation, threats,

6   destruction of legal work, use of physical force, and failure to allow for required interviews, all in

7   retaliation for filing legal actions and alleging sexual assault.  See id., pgs. 5-8. Plaintiff alleges

8   that on November 13, 2017, he met with Defendant Earles for an interview to discuss his various

9   complaints.  See id.  Plaintiff alleges that Defendant Earles used intimidation and verbal threats

10  when Plaintiff attempted to include details of the sexual assault that occurred in April 2016,

11  allegedly in an attempt to cause Plaintiff to refuse to go forward with the 602 interview.  See id.

12  Plaintiff alleges that Defendant Earles destroyed his "legal work" in retaliation, which also denied

13  his access to the courts.  See id.

14          Furthermore, Plaintiff alleges that he met with Defendant Hougland for PREA

15  interview because of his complaints and Defendant Hougland retaliated against Plaintiff by

16  threats and intimidation also in an attempt to get Plaintiff to refuse to go forward with the

17  interview. See id.  According to Plaintiff, Defendant Hougland said he would use anything

18  Plaintiff said in the interview to incriminate him in a pending criminal case against Plaintiff

19  arising from a charge of battery on a peace officer at a prior prison.  See id.  Plaintiff claims

20  Defendant Blanco was present and did nothing.  See id., pgs. 5-6.  Further, Plaintiff alleges that

21  Defendant Blanco refused Plaintiff a 602 interview where he could include the sexual assault in

22  order to exhaust his administrative remedies.  See id., pg. 7.  Plaintiff asserts that Defendant

23  Hougland interfered with Plaintiff's 602 process, threatened Plaintiff, and retaliated against

24  Plaintiff by "openly expressing that he would deter [Plaintiff] from filing such complaint and

25  receiving" § 1983 relief.  Id.

26  / / /

27  / / /

28  / / /

4

According to Plaintiff, Defendants Blanco and Hougland took adverse action against Plaintiff by stopping and refusing Plaintiff a videotaped 602 interview regarding his sexual assault claims, as required in order to exhaust, prior to filing legal action.  Id.  Plaintiff also claims that Defendant Hougland attempted to deter Plaintiff from completing his administrative remedies, by stating that "they both thought [Plaintiff] was making [the] story [of sexual assault] up to muddy the water" and that Defendant Earles was justified in using excessive force.  See ECF No. 12, pg. 6.  Further, Defendant Hougland allegedly stated that he would make sure that Plaintiff's complaints "went nowhere."  See id.

Claim III

Plaintiff also asserts a violation of his First Amendment rights based on denial of access to the courts.  See id., pg. 11.  Generally, it appears Plaintiff claims an interference with court access based on failure of Defendants to assist Plaintiff in preparation and filing of meaningful legal papers by providing assistance and allowing him the necessary 602 interviews.  See id.  Plaintiff states that he believes he has two claims for denial of access: (1)  claim for when "c/o" interfered with Plaintiff's attempt to bring legal action and (2) retaliation claim where "c/o" retaliated against Plaintiff for bringing, and attempting to bring, legal action.  See id.

Plaintiff asserts that Defendants engaged in intimidation and threats of retaliation to deter Plaintiff from exhausting administrative remedies necessary in order to file his federal action.  See id.  Plaintiff alleges that Defendants Earles and Blanco refused Plaintiff access to 602 interview and Defendant Hougland was "true to his threats and made sure that [his] 602 went nowhere" by refusing 602 interviews.  See id.  Defendant Hougland allegedly used threats and intimidation to deter Plaintiff from filing and exhausting claims on each action against officials in first 602 and in the subsequent 602 against Defendant Hougland, Earles and Blanco.  See id.  Plaintiff asserts that Defendant Earles threatened Plaintiff with destroying legal injury reports, transfer, using physical force to move Plaintiff from interview.  See id.  Further, Plaintiff alleges that Defendant Hougland "had [a] hand in" denial of his due process where he was given "impartial" [sic] hearing official, denied witnesses and evidence."  Id.

/ / /

5

1

**II. DISCUSSION**

2      Before the Court is a motion to partially dismiss, ECF No. 26-1. In Defendants'

3 motion to partially dismiss, Defendants argue that Plaintiff failed to state an actual injury in his

4 First Amendment access to courts claim.  See ECF No. 26-1 at 1.  Additionally, Defendants move

5 to dismiss all claims against Defendant Blanco and Hougland for Plaintiff's failure to exhaust all

6 available administrative remedies.  See id.  Except as relates to exhaustion, Defendants do not

7 otherwise challenge Plaintiff's Eighth Amendment claim or First Amendment retaliation claim.

8      A.      **First Amendment Access-to-Courts Claim**

9      Prisoners have a First Amendment right of access to the courts.  See Lewis v.

10 Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Jones v. Williams,

11 791 F.3d 1023, 1035 (9th Cir. 2015); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995).  Prison

12 officials must "assist inmates in the preparation and filing of meaningful legal papers by

13 providing prisoners with adequate law libraries or adequate assistance from persons trained in the

14 law."  Bounds, 430 U.S. at 828; Silva v. Di Vittorio, 658 F.3d 1090, 1103 (9th Cir. 2011)

15 (overruled on other grounds as stated by Richey v. Dahne, 807 F.3d 1202, 1209 n.6 (9th Cir.

16 2015).  But the right does not require a particular methodology.  See Lewis, 518 U.S. at 356.  It

17 guarantees the "capability of bringing contemplated challenges to sentences or conditions of

18 confinement before the courts."  Id.  It does not promise to turn inmates into effective litigators.

19 See id. at 354-55; Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009).

20      The right of access secures the ability to present non-frivolous claims to the court,

21 it does not secure a right to discover claims or litigate them effectively once filed.  See Lewis,

22 518 U.S. at 354-55; Phillips, 477 F.3d at 655.  The tools required are those that inmates need to

23 attack their sentences or challenge conditions of confinement.  See Lewis, 518 U.S. at 355;

24 Phillips, 477 F.3d at 655.  "Impairment of any other litigating capacity is simply one of the

25 incidental (and perfectly constitutional) consequences of conviction and incarceration."  Lewis,

26 518 U.S. at 355; see Phillips, 477 F.3d at 655.  The right is restricted to non-frivolous criminal

27 appeals, civil rights actions under 42 U.S.C. § 1983, and habeas corpus petitions.  Lewis, 518

28 U.S. at 353 n.3, 354-56.

The United States Supreme Court has identified two categories of access-to-court claims.  Christopher v. Harbury, 536 U.S. 403, 412-13 (2002).  The first category includes "forward-looking" claims, which allege that official action presently frustrates a plaintiff's ability to prepare and file a suit.  Id. at 413.  The second category, "backward-looking" claims, allege that due to official action, a specific case "cannot now be tried (or tried with all material evidence), no matter what official action may be in the future."  Id. at 413-14.  These cases look "backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable."  Id. at 414.

To establish an access to the court violation, a prisoner must identify an actual injury.  Lewis, 518 U.S. at 349-351; Nev. Dep't of Corrs. v. Greene, 648 F.3d 1014, 1018 (9th Cir. 2011); Urmancheev v. Anglea, No.:1:19-cv-00791-DAD-JLT (PC), 2020 WL 1904818, at *2 (E.D. Cal. Apr. 17, 2020).  An actual injury is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim."  Lewis, 518 U.S. at 349; Urmancheev, 2019 WL 1904818, at *2.  An actual injury is a jurisdictional requirement and may not be waived.  See Lewis, 518 U.S. at 348-52; Urmancheev, 2019 WL 1904818, at *2.  And in the backward-looking context more specifically, a plaintiff must identify: (1) loss of a "nonfrivolous," "arguable" underlying claim; (2) the official acts that frustrated the litigation of the underlying claim; and (3) a remedy that "may be awarded as recompense but [is] not otherwise available in some suit that may yet be brought."  Harbury, 536 U.S. at 414-18; Urmancheev, 2019 WL 1904818, at *2; Kabede v. Brown, No. 2:16-cv-1765 DB (P), 2017 WL 714300, at *6 (E.D. Cal. Feb. 22, 2017).

Here, Defendants argue Plaintiff fails to allege an actual injury.  According to Defendants:

> Although Plaintiff alleges that Defendants interfered with his ability to exhaust his administrative remedies for another case by misplacing his legal work and cancelling his 602 interview, Plaintiff fails to establish that he was denied access to the courts, that his case was dismissed, or that he suffered an actual injury as a result of Defendants' actions. In his FAC, Plaintiff alleges that Defendants' acts or omissions prejudiced his ability to exhaust his administrative remedies in the "suit [he] filed" which he identifies as case number "17-cv-1356-SAB" styled as *McCurdy v. Kernan*, Case No. 1:17-cv-01356-SAB (PC), (E.D. Cal.).

(*See* ECF No. 12 at 6; ECF No. 12 at 5-6; Request for Judicial Notice ("RJN"), Ex. A.) [footnote 4 omitted]. Specifically, Plaintiff alleges that, at the time he filed the instant action, he "had just filed a § 1983 action and needed to exhaust [his] administrative remedies, which [he] planned to do, then amend [his] complaint after [he] received a '2nd level response,' which never occurred because c/o retaliation." (ECF No. 12 at 5.) Plaintiff further alleges that when Blanco and Earles cancelled his "602" for a second time he could not move forward with his "602 and § 1983 action which also denied his access to courts." (ECF No. 12 at 5.)

In *McCurdy v. Kernan*, Plaintiff sued Officer Bautista for force used during violent cell extraction at CSP-Corcoran. (RJN Ex. A at 14-16.) Plaintiff alleged that during the April 18, 2016 cell extraction, Defendant Bautista, who was the "shield officer," crashed into Plaintiff with his shield, fell on top of Plaintiff with the shield, and then after Plaintiff was placed in restraints, Defendant Bautista grabbed Plaintiff's testicles and penis, squeezed them hard, and then punched Plaintiff in his genitals. (RJN Ex. A at 13-15.) Plaintiff submitted inmate appeal log no. CSPC-7-17-00350, which grieved that Defendant Bautista used excessive force against Plaintiff on April 18, 2016, during the cell-extraction, however Plaintiff failed to submit an inmate appeal that received a third-level decision. (RJN Ex. C at 10; *see also* ECF No. 12 at 4.)

On February 19, 2019, Defendant Bautista filed a motion for summary judgment alleging that Plaintiff failed to exhaust administrative remedies. (RJN Ex. B.) On June 19, 2019, the magistrate judge issued findings and recommendations denying Defendant's motion for summary judgment for failure to exhaust administrative remedies, which the court adopted in full on August 8, 2019. (RJN Ex. D.) A trial on Plaintiff's claims against Defendant Bautista was scheduled to begin on March 1, 2022, however, on January 31, 2022, Plaintiff filed a stipulation for voluntarily dismissal with prejudice indicating that the parties "had resolved [the] case in its entirety." (RJN Ex. E and F.)

ECF No. 26-1, pgs. 7-8.

Given the outcome of <u>McCurdy v. Kernan</u>, Defendants conclude that Plaintiff's ability to litigate against Officer Bautista was unhindered by Defendants' alleged conduct. See <u>id.</u> at 8.

The Court agrees.  Based on Plaintiff's allegations and Defendants' argument, Plaintiff generally alleges that Defendants actively interfered with his right to litigate his other case against Defendant Bautista.  Plaintiff cannot show, however, that Defendants' alleged conduct actually injured his litigation efforts. Although Plaintiff was not able to submit an appeal that received a third level decision, Plaintiff ultimately prevailed on Defendant's motion for summary judgement for failure to exhaust administrative remedies and then later voluntarily dismissed the case. Accordingly, the undersigned recommends granting Defendants' partial motion to dismiss as to Plaintiff's access-to-courts claim, which should be dismissed with

8

1 | prejudice as against all defendants.

2 |        In his opposition, Plaintiff reiterates his allegations that Defendants' conduct

3 | thwarted his ability to exhaust administrative remedies, thereby jeopardizing his prior litigation.

4 | See ECF No. 44.  As explained above, however, even if Defendants interfered with the

5 | exhaustion process, Plaintiff was not prejudiced because he ultimately prevailed on the

6 | exhaustion issue.  Thus, Plaintiff's claim is not cognizable due to lack of an actual injury.

7 |        **B.**     **Exhaustion of Administrative Remedies**

8 |        Prisoners seeking relief under § 1983 must exhaust all available administrative

9 | remedies prior to bringing suit.  See 42 U.S.C. § 1997e(a).  This requirement is mandatory

10 | regardless of the relief sought.  See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling

11 | Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)).  Because exhaustion must precede the filing of

12 | the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies

13 | while the lawsuit is pending.  See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002).  The

14 | Supreme Court addressed the exhaustion requirement in Jones v. Bock, 549 U.S. 199 (2007), and

15 | held: (1) prisoners are not required to specially plead or demonstrate exhaustion in the complaint

16 | because lack of exhaustion is an affirmative defense which must be pleaded and proved by the

17 | defendants; (2) an individual named as a defendant does not necessarily need to be named in the

18 | grievance process for exhaustion to be considered adequate because the applicable procedural

19 | rules that a prisoner must follow are defined by the particular grievance process, not by the

20 | PLRA; and (3) the PLRA does not require dismissal of the entire complaint if only some, but not

21 | all, claims are unexhausted.  The defendant bears burden of showing non-exhaustion in the first

22 | instance.  See Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014).  If met, the plaintiff bears the

23 | burden of showing that the grievance process was not available, for example because it was

24 | thwarted, prolonged, or inadequate.  See id.

25 |        The Supreme Court held in Woodford v. Ngo that, in order to exhaust

26 | administrative remedies, the prisoner must comply with all of the prison system's procedural

27 | rules so that the agency addresses the issues on the merits.   548 U.S. 81, 89-96 (2006).  Thus,

28 | exhaustion requires compliance with "deadlines and other critical procedural rules."  Id. at 90.

1   Partial compliance is not enough.  See id.  Substantively, the prisoner must submit a grievance

2   which affords prison officials a full and fair opportunity to address the prisoner's claims.  See id.

3   at 90, 93.  The Supreme Court noted that one of the results of proper exhaustion is to reduce the

4   quantity of prisoner suits "because some prisoners are successful in the administrative process,

5   and others are persuaded by the proceedings not to file an action in federal court."  Id. at 94.

6   When reviewing exhaustion under California prison regulations which have since been amended,

7   the Ninth Circuit observed that, substantively, a grievance is sufficient if it "puts the prison on

8   adequate notice of the problem for which the prisoner seeks redress. . . ."  Griffin v. Arpaio, 557

9   F.3d 1117, 1120 (9th Cir. 2009); see also Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010)

10  (reviewing exhaustion under prior California regulations).

11          A prison inmate in California satisfies the administrative exhaustion requirement

12  by following the procedures set forth in §§ 3084.1-3084.8 of Title 15 of the California Code of

13  Regulations.  In California, inmates "may appeal any policy, decision, action, condition, or

14  omission by the department or its staff that the inmate . . . can demonstrate as having a material

15  adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a).

16  The inmate must submit their appeal on the proper form and is required to identify the staff

17  member(s) involved as well as describing their involvement in the issue.  See Cal. Code Regs. tit.

18  15, § 3084.2(a).  These regulations require the prisoner to proceed through three levels of appeal.

19  See Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.2, 3084.7.  A decision at the third formal level,

20  which is also referred to as the director's level, is not appealable and concludes a prisoner's

21  departmental administrative remedy.  See id.   Departmental appeals coordinators may reject a

22  prisoner's administrative appeal for a number of reasons, including untimeliness, filing excessive

23  appeals, use of improper language, failure to attach supporting documents, and failure to follow

24  proper procedures.  See Cal. Code Regs. tit. 15, §§ 3084.6(b).  If an appeal is rejected, the inmate

25  is to be provided clear instructions how to cure the defects therein.  See Cal. Code Regs. tit. 15,

26  §§ 3084.5(b), 3084.6(a).

27  / / /

28  / / /

10

1          Under McBride v. Lopez, 807 F.3d 982, 987-88 (9th Cir. 2015), a prison grievance

2  system may be deemed "unavailable," excusing a plaintiff's lack of exhaustion, if two conditions

3  are met. First, a prisoner "must provide a basis for the court to find that he actually believed

4  prison officials would retaliate against him if he filed a grievance." Id. at 987. If the prisoner

5  makes this showing, he must then demonstrate that his belief was objectively reasonable; that is,

6  "there must be some basis in the record from which the district court could determine that a

7  reasonable prisoner of ordinary firmness would have understood the prison official's actions to

8  threaten retaliation if the prisoner chose to utilize the prison's grievance system. Only then will

9  the threat render the prison grievance system effectively unavailable." Id. at 987-988 (internal

10  citations omitted). Furthermore, "[h]ostile interaction with prison officials, even when it includes

11  a threat of violence, does not necessarily render the grievance system 'unavailable.'" Id. at 988.

12  "[G]eneral and unsubstantiated fears about possible retaliation" are also insufficient. Rodriguez v.

13  Cty. of L.A., 891 F.3d 776, 794 (9th Cir. 2018). Finally, "[a]lthough circumstantial evidence can

14  be sufficient to overcome summary judgment in a retaliation case, such evidence must be

15  specific." Sealey v. Busichio, 696 F. App'x 779, 781 (9th Cir. 2017) (citing McCollum v. Cal.

16  Dep't of Corr. & Rehab., 647 F.3d 870, 882 (9th Cir. 2011)). References to unnamed officers

17  engaging in various activities at unspecified times do not satisfy this requirement. See id.

18          Since 2014, the failure to exhaust administrative remedies is appropriately brought

19  on a motion for summary judgment.  See Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014).  The

20  issue may, however, be raised on a motion to dismiss where the failure to exhaust is clear on the

21  face of the complaint.  See id. at 1166.

22          In their motion to partially dismiss, Defendants argue that, as shown by the inmate

23  grievance attached to Plaintiff's complaint, Plaintiff failed to exhaust administrative remedies for

24  any claims against Defendant Blanco and Defendant Hougland. See ECF No. 26-1, pgs. 12-15.

25  Defendants' argument is based on "hand copy of 602 [inmate grievance] original" attached to

26  / / /

27  / / /

28  / / /

Plaintiff's amended complaint.  See ECF No. 12, pgs. 18-19.  Specifically, Defendants argue:

> Plaintiff failed to exhaust available administrative remedies because his administrative grievance did not allege any wrongdoing by Defendants Blanco or Hougland. An administrative grievance need not necessarily name every individual that could be subjected to a subsequent lawsuit. *See Reyes v. Smith*, 810 F.3d 654, 659 (9th Cir. 2016) (holding that prisoner's identifying a committee's decision as the subject of his grievance was sufficient to permit a 1983 suit against members of that committee); *see also Jones*, 549 U.S. at 219 (considering Michigan department of correction grievance regulations with no requirement of naming all individuals involved in a grievance). "However, an administrative grievance which both fails to name defendants and fails to allege the conduct of which the plaintiff now accuses those defendants is insufficient to satisfy the PLRA exhaustion requirement." *Humdy v. Wilcher*, No. CV 17-00646-GW (JDE), 2018 WL 3629909, at *3 (C.D. Cal. Apr. 11, 2018).
>
> Here, the only reference to Defendant Hougland in the Inmate Appeal is an allegation that Plaintiff met with "Lt. Hougland who said the investigation of [Earles] will go nowhere." (ECF No. 12 at 18-19.) In passing, Plaintiff referenced Defendant Hougland when he detailed the follow-up interviews, he attended following his sexual assault claims. Specifically, Plaintiff explained that after Earles forcefully escorted him back to his cell, Earles came to his cell, and concluded the video interview. (*Id*.) Following the canceled interview, Plaintiff never received a copy of his "7219." (*Id*.) However, he later "completed an interview w/Sgt. Bullard" who questioned him "about the assault," and then he "met with Lt. Hougland [who] said that the investigation of [Earles] will go nowhere." (*Id*.) Plaintiff made absolutely no mention of Defendant Blanco, nor did he describe any of the conduct, i.e., retaliation or interference with access to courts, of which he now accuses Defendants Blanco and Hougland. (*See* ECF No. 12 at 3-11.) Plaintiff does not claim in his grievance that *anyone* other than Defendant Earles took adverse action on November 13, 2017. (ECF No. 12 at 18-19.) Thus, Plaintiff's grievance failed to provide CDCR an opportunity to investigate any allegations against Blanco or Hougland, because it failed to allege that anyone other than Defendant Earles took unlawful action during the November 13 canceled interview. *See Woodford*, 548 U.S. at 93-94.
>
> Because Plaintiff's grievance does not allege that anyone other than Defendant Earles was involved in the allegedly unlawful events, it cannot have exhausted claims against Defendants Blanco and Hougland. *See Morton v. Hall*, 599 F.3d 942, 945-46 (9th Cir. 2010) (holding that an administrative grievance that did "not even mention" the basis for a claim asserted in a civil action failed to exhaust that claim); Cal. Code Regs. tit. 15 § 3084.2(a); *Humdy*, 2018 WL 3629909, at *3. This argument stands even in the face of Plaintiff's arguments that Defendants thwarted his ability to exhaust to the third level. At bottom, even if Plaintiff exhausted his attached grievance to the third level of review, that grievance still failed to exhaust his retaliation and denial of access to courts claims against Blanco and Hougland because Plaintiff did not mention those allegations in the originally-submitted 602 grievance. Because Plaintiff's grievance did not allege any wrongdoing by anyone other than Defendant Earles, and he does not allege that he filed a separate or additional grievance regarding his retaliation and access to courts claims, Plaintiff failed to exhaust his available administrative remedies against Defendants

1    Blanco and Hougland as required by the PLRA, and all claims against
them should be dismissed.

2

3    ECF No. 26-1 at 14.

4    Defendants' argument is persuasive.  In the amended complaint, Plaintiff

5    affirmatively alleges that he exhausted available administrative remedies as to his claims.  See

6    ECF No. 12, pgs. 3, 5, 11.  Plaintiff does not attach a copy of the actual form 602 inmate

7    grievance he submitted in connection with his claims.  Rather, at Exhibit B to the amended

8    complaint, Plaintiff provides what he states is a two-page handwritten copy of his form 602 dated

9    November 16, 2017.  See id. at 18-19.  Defendants have requested that the Court take judicial

10   notice of the actual 602 form Plaintiff submitted to prison officials on November 16, 2017, and

11   which was assigned number SAC-B-17-04319.  See ECF No. 26-2, pg. 162 (Exhibit G to request

12   for judicial notice).  This document contains the exact same language as the handwritten copy

13   attached to the amended complaint.  As Defendants correctly observe, Plaintiff's grievance only

14   references Defendant Earles with respect to the alleged use of excessive force.  The grievance

15   does not mention Defendant Blanco and Defendant Hougland is only mentioned insofar as

16   Plaintiff states that Hougland told Plaintiff that any investigation "will go nowhere."  This

17   reference, however, was to what Hougland allegedly said in the context of Plaintiff's separate

18   grievance concerning the events which were the topic of McCurdy v. Kernan.  As discussed

19   above, even if that comment is seen as accusing Hougland of misconduct with respect to

20   processing Plaintiff's grievances and interfering with Plaintiff's access to the courts, Plaintiff

21   cannot state a claim on this theory because he did not suffer any actual injury.

22   While typically the Court may not look to extrinsic evidence to decide a motion to

23   dismiss, it is appropriate in this instance to look to Exhibit G to Defendants' request for judicial

24   notice.  In particular, the Court may consider documents which, as here, are referenced in the

25   complaint and upon which the complaint relies.  See Branch, 14 F.3d at 454.  Plaintiff's amended

26   complaint references the November 16, 2017, inmate grievance and Plaintiff's allegation that he

27   exhausted administrative remedies relies on this document.  Further, the exact contents of the

28   document are reproduced by Plaintiff and attached to Plaintiff's amended complaint.

1    In his opposition, Plaintiff argues that, in essence, Defendants in this case

2    interfered with and thwarted his ability to exhaust administrative remedies, just as Plaintiff says

3    happened with his prior litigation, discussed above.  See ECF No. 44.  This argument is

4    unconvincing because Plaintiff's failure to exhaust in this case does not stem from an inability to

5    pursue his grievances through the required levels of administrative review.  Rather, Plaintiff's

6    failure to exhaust stems from the lack of claims raised in this lawsuit being asserted in Plaintiff's

7    grievances.  Thus, any interference with the exhaustion process did not affect the deficiency with

8    respect to exhaustion present in this case.

9

10   ### III.  CONCLUSION

11   Based on the foregoing, the undersigned orders and recommends as follows:

12   1.    It is ORDERED that the findings and recommendations issued on March

13   19, 2024, ECF No. 45, are VACATED.

14   2.    It is RECOMMENDED that Defendants' request for judicial notice, ECF

15   No. 26-2, be GRANTED.

16   3.    It is RECOMMENDED that Defendants' partial motion to dismiss, ECF

17   No. 26, be GRANTED.

18   4.    It is RECOMMENDED that Plaintiff's First Amendment access-to-courts

19   claim be DISMISSED as against all defendants without leave to amend for failure to allege an

20   actual injury.

21   5.    It is RECOMMENDED that Plaintiff's First Amendment retaliation claims

22   against Defendants Blanco and Hougland be DISMISSED without leave to amend for failure to

23   exhaust administrative remedies.

24   6.    It is RECOMEMNDED that this action proceed on the first amended

25   complaint, ECF No. 12, as to Plaintiff's Eighth Amendment excessive force claim against

26   Defendant Earles only.

27   / / /

28   / / /

1       7.     It is RECOMMENDED that Defendant Earles be ordered to file an answer

2 to Plaintiff's first amended complaint.

3       These amended findings and recommendations are submitted to the United States

4 District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14

5 days after being served with these amended findings and recommendations, any party may file

6 written objections with the court.  Responses to objections shall be filed within 14 days after

7 service of objections.  Failure to file objections within the specified time may waive the right to

8 appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

9

10 Dated:  March 22, 2024

11                                   _____

12                                   DENNIS M. COTA
                                  UNITED STATES MAGISTRATE JUDGE

15